**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| STEPHANIE GEORGE, | : | Case No. 3:18-cv-342 |
| Plaintiff, | : | |
| vs. | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

In May 2015, Plaintiff Stephanie George applied for Child Disability Benefits based on her father's earnings and applied for Child Disability Benefits and Supplemental Security Income based on her mother's earnings. Both applications were denied initially and upon reconsideration. After a hearing, Administrative Law Judge (ALJ) Gregory G. Kenyon concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act. Plaintiff brings this case challenging the Social Security Administration's denial of her applications for benefits.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #11), and the administrative record (Doc. #6).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Kenyon's non-disability decision.

## II.    Standard of Review

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741

F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III. Background

Plaintiff asserts that she has been under a "disability" since November 23, 2002. She was thirteen years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 416.963(c). She has a high school education. *See id.* § 416.964(b)(4).

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. #6, *PageID* #s 40-52, 63-74), Plaintiff's Statement of Errors (Doc. #7), and the Commissioner's Memorandum in Opposition (Doc. #9). Rather than repeat these summaries, the pertinent evidence will be discussed when addressing the parties' arguments.

IV.     **The ALJ's Decision**

As noted previously, it fell to ALJ Kenyon to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

   Step 1:   Plaintiff has not engaged in substantial gainful employment since November 23, 2002.

   Step 2:   She has (and had prior to attaining age 22) the severe impairments of a history of tachycardia; obesity; chronic headaches; depression; and anxiety/post-traumatic stress disorder.

   Step 3:   She does not (and did not prior to attaining age 22) have an impairment or combination of impairments that met or medically equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

   Step 4:   Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … subject to the following limitations: (1) occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) limited to performing unskilled, simple, repetitive tasks; (5) occasional contact with coworkers and supervisors; (6) no public contact; (7) no fast paced production work or strict quotas; (8) limited to performing jobs

4

>
> which involve very little, if any, change in the job duties or the work routine from one day to the next."

Step 4: She has no past relevant work.

Step 5: She can (and could prior to attaining age 22) perform a significant number of jobs that exist in the national economy.

(Doc. #6, *PageID* #s 40-52, 63-74). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 51, 74.

## V. Discussion

Plaintiff contends that the ALJ erred in rejecting the opinions of her treatment providers. Further, he did not meaningfully weigh the non-examining psychologists' opinions and made unreasonable findings regarding her suicidal ideation.

The Commissioner maintains that substantial evidence supports the ALJ's decision.

### A. Opinion Evidence

Plaintiff contends that the ALJ failed to meaningfully and reasonably weigh the opinions of her mental health providers, Sheila Dunn, CNP, and Lana Mayhew-Schommer, MAT, ATR, BC, LSW.

The Regulations require an ALJ to consider all evidence in the case record, including evidence from all medical sources. 20 C.F.R. § 416.920(a)(3), 416.929(f). The term "medical sources" refers to both "acceptable medical sources" and healthcare providers who are not "acceptable medical sources." Soc. Sec. R. 06-03p, 2006 WL

5

2329939, at *1 (Soc. Sec. Admin. Aug. 9, 2006)[2] (citing 20 C.F.R. §§ 404.1502, 416.902). Only acceptable medical sources can establish the existence of a medically determinable impairment, provide "medical opinions," and be considered a treating source whose medical opinion may be entitled to controlling weight. *Id.* (citations omitted).

Evidence from healthcare providers who are not acceptable medical sources can only be used to show the severity of impairments and how it affects the claimant's ability to work. *Id.* The same factors used to evaluate acceptable medical sources can be used to evaluate opinions from other sources. *Id.* at *4-5. These factors include, but are not limited to, the length and frequency of the relationship, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support an opinion, how well the source explains the opinion, whether the source has a specialty or area of expertise, and other factors that tend to support or refute the opinion. *Id.* at *4-5. Although not required by the Regulations, "the adjudicator generally *should* explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning…." *Id.* at *6 (emphasis added).

The Sixth Circuit recognizes the importance of counselors: "many unemployed disability applicants receive treatment at clinics that render care to low income patients

---

[2] The Social Security Administration rescinded Soc. Sec. R. 06-03, effective March 27, 2017. At the time Plaintiff applied for benefits, Soc. Sec. R. 06-03p was still in effect.

6

by providing mental health treatment through [] counselors. The practical realities of treatment for those seeking disability benefits underscores the importance of addressing the opinion of a mental health counselor as a valid 'other source' providing ongoing care." *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011). Further, although counselors are not acceptable medical sources, when a mental health counselor has expertise and a long-term relationship with an individual, their opinions are "entitled to consideration …." *Id.*

Ms. Dunn, as a Certified Nurse Practitioner, and Ms. Mayhew-Schommer, as an art therapist (board certified art therapist and licensed social worker), are not "acceptable medical sources" and instead fall under the category of "other sources." 20 C.F.R. § 416.913(d). ALJ Kenyon assigned Ms. Dunn and Ms. Mayhew-Schommer's opinion "little weight." (Doc. #6, *PageID* #44). He gave two reasons: "they reflect uncritical acceptance of [Plaintiff's] subjective allegations and complaints" and their "therapy notes reflect her functioning to be nearly normal in most aspects." *Id.* (internal citations omitted).

Plaintiff asserts that the ALJ's weighing of her mental health providers opinions is "inadequately specific and substantive." (Doc. #7, *PageID* #990). Specifically, the ALJ's first reason—that her mental health providers' opinions reflect uncritical acceptance of her subjective allegations— "is an untenable criticism of mental health opinion evidence." *Id.* (citation omitted). And, Plaintiff is right.

Indeed, "a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment" and, "consequently, the diagnostic

7

techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine…. [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 643-44 (6th Cir. 2013) (quoting *Blankenship v. Bowen,* 874 F.2d 1116, 1121 (6th Cir. 1989)). Thus, when evaluating opinions from mental health providers, reliance on an individual's self-reports in formulating their opinion is not necessarily an adequate basis for the ALJ to reject the opinion. *See Blankenship*, 874 F.2d at 1121 ("The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.").

In the present case, Ms. Dunn and Ms. Mayhew-Schommer had treated Plaintiff for over two years when they completed the mental impairment questionnaire. Their treatment notes reflect not only Plaintiff's reports but also their observations. For example, Ms. Mayhew-Schommer indicated in several of her notes that Plaintiff had a blunted or flat affect and was depressed, sad, tearful, and anxious. (Doc. # 6, *PageID* #s 775-82. There are no other reasons to question their diagnostic techniques. Accordingly, it is not reasonable to assume that their opinions were based exclusively on Plaintiff's subjective allegations.

Plaintiff further asserts that substantial evidence does not support the ALJ's conclusion that Ms. Dunn and Ms. Mayhew-Schommer's treatment notes reflect Plaintiff's functioning to be "nearly normal." Plaintiff is correct. Ms. Mayhew-

8

Schommer's treatment notes are consistent with her opinion. For example, in June 2015, she noted several times that Plaintiff was depressed with a blunted affect. *Id.* at 780-82. At one appointment, Plaintiff was tearful and at another, she reported increased anxiety and panic attacks. *Id.* at 779-80. In July 2015, Ms. Mayhew-Schommer noted that Plaintiff was sad, tearful, and/or anxious, and had a blunted affect. *Id.* at 775-76. She had trouble going to sleep, was depressed, and/or had a flat affect. *Id.* at 777.

Notes from Plaintiff's other treatment providers are likewise consistent with Ms. Mayhew-Schommer's notes and opinion. For instance, in May 2015, Shirlann Knight, M.D., noted that Plaintiff was tense, depressed, and heard noises at night. *Id.* at 737. Plaintiff reported that she sometimes wishes to be gone and told her mom she wanted to jump out of the car. *Id.* In June, Dr. Knight indicated Plaintiff was tense and depressed. *Id.* at 736. Further, Ramakrishna Gollamudi, M.D., noted on several occasions that Plaintiff had a depressed and anxious mood and a congruent affect. *Id.* at 915-26.

Hospital records, moreover, support Ms. Dunn and Ms. Mayhew-Schommer's opinion. In May 2015, for instance, Plaintiff presented to the emergency department "with increased depression and suicidal ideation for the past several weeks." *Id.* at 804. She reported that she has constant moderate-to-severe anxiety and she feels worthless and helpless. *Id.* During her examination, the doctor noted that she was tearful. *Id.* at 808. Irene Dirksen, LPCC, noted that Plaintiff was "having racing thoughts, thoughts of not wanting to be here, [and] increased PTSD symptoms." *Id.* at 815.

She returned to the emergency department in September 2015. *Id.* at 845. She had suicidal ideation; "patient reports that she was going to wait until everyone went to

9

sleep and then she was going to go downstairs and cut herself on her left arm with a knife." *Id.* at 845. The doctor indicated that she was sad, depressed, and suicidal. *Id.* at 849. During a mental status exam, a doctor indicated that Plaintiff appeared mildly distressed and experienced auditory hallucinations. *Id.* at 870. Further, she had slowed speech, avoidant eye contact, depressed mood, and constricted affect. *Id.*

In April 2016, Plaintiff presented to the emergency department because of suicidal ideation. *Id.* at 938. Plaintiff repeatedly told staff that she did not want to be around anyone and did not want to live. *Id.* She had felt that way for several weeks. Further, she heard voices that were telling her to "go ahead and do it." *Id.* Upon examination, the doctor noted that Plaintiff had a flat affect, poor eye contact, and appeared depressed. *Id.* at 942.

Together, this evidence illustrates the severity of Plaintiff's mental conditions. Accordingly, substantial evidence does not support the ALJ's finding that Plaintiff's functioning is "nearly normal in most aspects." *Id.* at 44 (citations omitted).

Plaintiff asserts that the ALJ also erred in weighing the opinions of the State agency non-examining psychologists. The ALJ summarized their findings and then assigned their opinions "partial weight." *Id.* His only explanation: "The undersigned has taken [Plaintiff's] testimony into consideration regarding agoraphobic, and further limited her functional capacity." *Id.*

Regardless of the source, the Regulations require an ALJ to consider and evaluate every medical opinion in the record. *See* 20 C.F.R. §§ 416.927(b)-(c). "Unless a treating source's opinion is given controlling weight, the administrative law judge *must explain* in

10

the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us." *Id.* § (e)(2)(ii) (emphasis added). In deciding what weight to assign an opinion, an ALJ must consider the following factors: examining relationship; treatment relationship; supportability; consistency; specialization; and other factors. *Id.* § (c).

ALJ Kenyon did not give controlling weight to a treating physician's opinion and was thus required to explain the weight given to the State agency non-examining psychologists' opinions using the factors set forth above. *See id.* § (e)(2)(ii). However, ALJ Kenyon did not. This constitutes error.

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[3]

**B.     Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the

---

[3] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her applications for Child Disability Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Stephanie George was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be terminated on the Court's docket.

December 4, 2019 *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).